| | |
|---|---|
| RUSSELL HOTCHKISS,<br>        Plaintiff,<br>v.<br><br>CEDAR RAPIDS COMMUNITY SCHOOL DISTRICT, RUSS BUSH as the successor in interest to NOREEN BUSH, deceased, TAWANA GROVER, JENNIFER BORCHERDING, CINDY GARLOCK, NANCY HUMBLES, DEXTER MERSCHBROCK, JENNIFER NEUMANN, MARCY ROUNDTREE, and DAVID TOMINSKY.<br>        Defendants. | No. 23-CV-33<br><br>COMPLAINT<br><br>JURY TRIAL DEMANDED |

**Introduction**

Free speech founded America. The right to attend public meetings and speak to one's elected representatives is at the heart of participatory democracy. Public officials should understand that criticism comes with the job. This case is about school officials who didn't share this value. Faced with legitimate criticism for their overbroad, pointless, and harmful response to the COVID-19 pandemic, the defendants lashed out at their critic and permanently banned him from all school property—**even though he was the parent of a student in their district**. Because their shocking misconduct violates rights protected under the United States Constitution and the Iowa Open Meetings Act, plaintiff brings this action.

## Parties, Jurisdiction, and Venue

1.      Russell Hotchkiss is a resident of Linn County, Iowa.

2.      Defendant Cedar Rapids Community School District (CRCSD or the District) is a public school district of the State of Iowa with its administrative offices located in Cedar Rapids, Linn County, Iowa. Russ Bush is the successor in interest under Iowa Code § 611.22 to Noreen Bush, the deceased former superintendent of the District. Grover is the current superintendent of the district. Jennifer Borcherding, Cindy Garlock, Nancy Humbles, Dexter Merschbrock, Jennifer Neuman, Marcy Roundtree, and David Tominsky are the members of the CRCSD School Board during the actions described in this complaint. All individual defendants are sued in individual and official capacities.

3.      This Court has jurisdiction under 28 U.S.C. §§ 1331, 1343, and 1367 and 42 U.S.C. § 1983. The Court has authority to issue a declaratory judgment, to order injunctive relief, and provide other necessary and proper relief under 28 U.S.C. §§ 2201 and 2202.

4.      Venue in this Court is appropriate under 28 U.S.C. § 1391 because the conduct giving rise to this action occurred in this judicial district and the defendants live and have their principal place of business in this judicial district.

## Factual Background

5.      Hotchkiss is a resident in the CRCSD. He had a child enrolled in the First Grade at CRCSD's Hiawatha Elementary School during the 2021-2022 school year. Believing that the district's policies related to the COVID-19 pandemic were harmful to

his child and others, he attended the school board's November 15, 2021, to share his views. Hotchkiss followed the rules to speak at the meeting. He signed up to speak during the public comment period and spoke[1] to the board for his allotted five minutes. Although he was pointed in his comments, he refrained from profanity, aggressive language, or any conduct that could be perceived as disruptive or threatening.

6.      A week later, on November 22, 2021, Hotchkiss met with Bush at her office to discuss his complaints in more detail. Hotchkiss brought his wife and their son to the meeting. Hotchkiss had a civil discussion with Bush about the district's policies that ended amicably with Bush complimenting Hotchkiss on his son's good behavior during the meeting. At no time during the November 22 meeting did Bush express any concern to Hotchkiss about his behavior during the November 15, 2021, board meeting.

7.      Hotchkiss signed up to speak again at the district's December 13, 2021, school board meeting. Because Hotchkiss had more he wanted to say to the school board and school officials than would be permitted in a five-minute comment period, Hotchkiss recruited other individuals to also sign up during the public comment period.

---

[1] The video of the meeting is available at this link:

<<https://www.youtube.com/live/imtFBuIhQeA?feature=share>>

Hotchkiss speaks from 35:19 to 40:21.

8.      Hotchkiss was the first speaker[2] during the December 13 meeting's public comment period. He presented his remarks, again critical of the school district's pandemic policies, for the allotted five minutes. At the end of Hotchkiss' five minutes, the next person on the list for public comment stated that he yielded his time to Hotchkiss. The school district employee who was keeping time for speakers indicated her assent to this and Hotchkiss continued to speak. At the conclusion of each five-minute period, the next person who had signed up yielded his or her time to Hotchkiss. As a result, Hotchkiss was able to address the school board for approximately 29 minutes. The total amount of time used for public comment was not increased due to individuals yielding their time to Hotchkiss.

9.      At no time during the December 13 meeting did any school board member or school district employee indicate to Hotchkiss that the practice of one speaker yielding time to another was not permitted (in fact the person keeping track of speakers and their time said "all right" when Hotchkiss stated another individual wished to yield his time). As with the November 15 meeting, Hotchkiss' statements to the school board did not violate any plausible rule of decorum for the meeting. At no time did any school board member or school district employee indicate to Hotchkiss any concern about his behavior during the meeting.

_____

[2] The video of this meeting is available at this link:
<<https://www.youtube.com/live/K13ELF-a3tE?feature=share>>
Hotchkiss speaks from 31:08 to 1:00:47.

10.     The next school board meeting was scheduled for January 10, 2022. Hotchkiss intended to attend the meeting to speak again during the public comment period, but he never got a chance to do so.

11.     At approximately 4:00 p.m. a Cedar Rapids police officer arrived at Hotchkiss' residence to serve him a document. Mrs. Hotchkiss was home and was terrified by the presence of a police officer and the possibility that Hotchkiss was going to be arrested. By the time Hotchkiss arrived home the officer was gone.

12.     The officer had left his number for Hotchkiss. Hotchkiss called him and learned that the officer had a no trespassing notice to serve on Hotchkiss. Hotchkiss told the officer he was planning to attend the school board meeting and could be served when he arrived at the district office.

13.     When Hotchkiss arrived at the district office, he was met by three police officers. Hotchkiss was served a no trespassing notice, a true copy of which is attached to this complaint as Exhibit A.

14.     The notice was signed by then CRCSD superintendent Noreen Bush. The notice states it was entered "[i]n consultation with the Cedar Rapids Community School District (CRCSD) Board President David Tominsky, CRCSD Board Vice President Cindy Garlock, CRCSD Legal Counsel, and the Cedar Rapids Police Department." The notice constitutes a statement of District policy which, upon information and belief, has been ratified by all defendants.

15.     The notice states that Bush "is writing to provide you with a notice of no trespass which immediately excludes you from appearing on any Cedar Rapids

Community School District premises effective January 10, 2022. This includes any Cedar Rapids Community School District's property or facilities or any property owned or controlled by the District, for any reason from this date forward and until further notice. Failure to follow this notice will result in your immediate removal any may include assistance from law enforcement."

16.     The notice explained the reason for Hotchkiss' ban from district property. It stated the "notice is a result of your actions during the November 15, 2021 and December 13, 2021 Board of Education Meetings held at the Educational Leadership & Support Center which included disruptive and threatening behavior towards CRCSD school board members and staff." The notice continued that "[y]our actions interfere with our goal to maintain a safe, secure, and orderly District environment and violate District Policy 1007 'Conduct on School District Premises' and Regulation 1002.2 'Visitors to District' and Iowa Code Chapter 723 and 716.7(2)(a) which outlines expectations on how CRCSD staff and school officials will be treated and consequences thereof."

17.     The District's policies cited in the notice are general policies about conduct by parents and community members while on District property. Policy 1007 contains broad prohibitions about misbehavior on District property. Regulation 1002.2 has a general requirement for visitors to "conduct themselves with respect and consideration for the rights of others" and specific prohibitions against possession of weapons, alcohol, and tobacco on District property. Iowa Code Chapter 723 is a portion of the Iowa Criminal Code that has criminal statutes against riot, unlawful assembly,

6

failure to disburse a riot on order of a peace officer, and disorderly conduct. Iowa Code § 716.7(2)(a) is the definition of the criminal offense of trespass.

18.     The notice ended with a statement that Hotchkiss could communicate with school board members in writing and that "[a]s a parent, you may communicate directly with Mr. Stephen Probert, Hiawatha Elementary School" by telephone.

19.     Hotchkiss read the notice before leaving District property. Because he had a child in First Grade, he asked the officer if the notice prevented him from dropping off and picking up his child from school. The officer stepped into the district office and spoke with Bush and returned to say that dropping off and picking up his child would be permitted. Bush did not modify the letter or otherwise follow up in writing to clarify this, however.

20.     Because he had been threatened with being arrested, Hotchkiss did not attend the January 10, 2022, board meeting. He has not attended any of the regularly scheduled school board meetings since receiving the January 10, 2022, notice. According to the District's website, Hotchkiss has been unable to attend at least 38 regular board meetings since receiving the notice.

21.     The defendants' actions caused Hotchkiss emotional distress and loss of consortium with his spouse. Hotchkiss was alarmed by the risk of being arrested for the ordinary action of attending a child's event at school or visiting with a teacher or seeing his child's classroom. Hotchkiss and his spouse decided it was necessary to take advantage of Iowa's open enrollment laws to move their child to a neighboring school

district so that Hotchkiss did not risk an unjust arrest for engaging in ordinary activities of a parent.

22.     Hotchkiss was also unable to speak to the school board to share his views about district policies. Denied a forum that the District left open for other individuals to continue to use, Hotchkiss was unable to share public comments with the school board at the time allotted for that activity during regular board meetings.

23.     Bush died on October 23, 2022. Her surviving spouse, Russ Bush, is the legal representative of her estate as the successor in interest for purposes of Iowa's survival statute, Iowa Code § 611.22. On information and belief, no estate has been opened for Noreen Bush.

24.     Grover succeeded Noreen Bush as the District's superintendent. At no time since the notice was issued on January 10, 2022, has it been modified or rescinded in writing nor has any District official communicated to Hotchkiss that he is permitted to be on District property again.

### Count I – Retaliation in Violation of Rights Protected under the First and Fourteenth Amendments of the U.S. Constitution

25.     The Civil Rights Act of 1871, later codified at 42 U.S.C. § 1983 and as interpreted by the U.S. Supreme Court, provides that government subdivisions "shall be liable to the party injured in an action at law, suit in equity, or other proper proceedings" for the "deprivation of any rights, privileges, or immunities secured by the Constitution."

8

26. The Fourteenth Amendment to the Constitution incorporates the rights under the First Amendment to engage in speech and to petition the government for redress of grievances.

27. The government discriminates against viewpoints in violation of the First Amendment when it disfavors certain speech because of the speaker's ideology, opinion, or perspective. *Rosenberger* v. *Rector & Visitors of Univ. of Va.*, 515 U.S. 819, 829 (1995). An individual has the right to be free from retaliation for his exercise of his First Amendment rights of speech and petition of the government. *Garcia* v. *City of Trenton*, 348 F.3d 726, 728-29 (8th Cir.)

28. When the government creates a limited public forum for First Amendment purposes, the right to not be excluded in retaliation for First Amendment activities is clearly established law such that district officials will be denied qualified immunity for their actions to retaliate against a speaker's viewpoint. *Gerlich* v. *Leath*, 861 F.3d 697, 709 (8th Cir. 2017). Thus, a prohibition on Hotchkiss participating in future public comment sessions based upon the views he expressed to the school board violated his right to be free from retaliation for exercising his First Amendment rights.

29. Defendants' retaliatory actions in banning Hotchkiss from District property sought to deprive and did deprive Hotchkiss of the rights, privileges, and immunities secured by the Constitution of the United States under the First Amendment as made applicable to the States through the Fourteenth Amendment.

30.     Defendants' retaliatory actions caused injury to Hotchkiss including, but not limited to, loss of standing in the community, loss of consortium with his spouse, and emotional injury.

31.     Defendants' retaliatory actions were a direct result of Hotchkiss engaging in protected activities and were a substantial and motivating factor in defendants' retaliatory actions. Defendants' retaliatory actions would chill a person of ordinary firmness from engaging in or from continuing to engage in speech and petition rights protected under the Constitution.

32.     As a result of the defendants' actions the Court should award damages, injunctive relief, court costs, attorney fees, and such other relief as allowed by law.

33.     Hotchkiss demands jury trial for his claim.

**Count II – Violation of Iowa Open Meetings Act**

34.     The intent of Iowa Code Chapter 21, the Iowa Open Meetings Act, is "to assure, through a requirement of open meetings of governmental bodies, that the basis and rationale of governmental decisions, as well as those decisions themselves, are easily accessible to the people. Ambiguity in the construction or application of this chapter should be resolved in favor of openness." Iowa Code § 21.1.

35.     The CRCSD school board is required to conduct meetings in "open session." This term means "a meeting to which *all* members of the public have access." Iowa Code § 21.2(3) (emphasis added). Unless a closed session is permitted for a reason specified under the statute, "all actions and discussions at meetings of governmental

bodies, whether formal or informal, shall be conducted and executed in open session."
Iowa Code § 21.3(1).

36.     Although the CRCSD is authorized by Iowa Code § 21.7 to "mak[e] and
enforc[e] reasonable rules for the conduct of its meetings to assure those meetings are
orderly, and free from interference or interruption by spectators" nothing in Iowa law
permits the board to ban a speaker from attendance at future meetings or from school
property for the viewpoint the speaker expresses during a public comment period during
a board meeting.

37.     According to information available on the District's website, the CRCSD
school board has met 38 times since the January 10, 2022, letter to Hotchkiss. At each of
these meetings the school board conducted business that could not be done in closed
session. Hotchkiss was unable to attend these board meetings to observe the school
board conduct its business. Because Hotchkiss was barred unlawfully from attending
school board meetings, those meetings did not meet the definition of an "open
meeting" under Iowa Code § 21.2(3) because "all" members of the public were not
permitted to attend. Each board member who participated in those meetings did so in
violation of Hotchkiss' rights under the Iowa Open Meetings Act. Upon information
and belief, the school board members were aware of and ratified the exclusion of
Hotchkiss from attending board meetings (in addition to his exclusion from District
property).

38.     The violation of Hotchkiss' statutory rights to attend meetings under
Iowa law is a claim that is so related to Hotchkiss' claim under Count I of this complaint

that it forms part of the same case or controversy under Article III of the Constitution.

28 U.S.C. § 1367.

39.     The Court should order under Iowa Code § 22.10 the defendants to pay damages for each violation in an amount of not less than $1,000 and up to $2,500 per knowing violation, or not less than $100 and up to $500 for any other violation, an injunction against further violations of the Iowa Open Meetings Act, court costs, attorney fees, and such other relief as allowed by law.

Respectfully submitted,

/s/ Alan R. Ostergren
**Alan R. Ostergren**
ALAN R. OSTERGREN, PC
500 East Court, Suite 420
Des Moines, Iowa 50309
(515) 207-0134
alan.ostergren@ostergrenlaw.com