**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF IOWA
CEDAR RAPIDS DIVISION**

| | |
|---|---|
| RUSSELL HOTCHKISS, | 23-CV-33-CJW-MAR |
| Plaintiff, | |
| vs. | **MEMORANDUM OPINION AND ORDER** |
| CEDAR RAPIDS COMMUNITY SCHOOL DISTRICT, RUSS BUSH as the successor in interest to NOREEN BUSH, deceased, TAWANA GROVER, JENNIFER BORCHERDING, CINDY GARLOCK, NANCY HUMBLES, DEXTER MERSCHBROCK, JENNIFER NEUMANN, MARCY ROUNDTREE, and DAVID TOMINSKY, | |
| Defendants. | |

_____

**TABLE OF CONTENTS**

I.      BACKGROUND ............................................................................. 3

II.     PRELIMINARY INJUNCTION STANDARD ......................................... 7

III.    ANALYSIS.................................................................................... 8

     A.    Irreparable Harm.................................................................... 8

         1.    Applicable Law ............................................................... 8

         2.    Analysis ....................................................................... 9

     B.    Likelihood of Success on the Merits .......................................11

         1.    Applicable Law ..............................................................11

2.     Analysis ……………………………………………………13

C.     Protected Activity ……………………………………………13

D.     Motivation……………………………………………………16

E.     Balance of Harms ……………………………………………21

1.     Applicable Law ………………………………………21

2.     Analysis ……………………………………………………21

F.     Public Interest ………………………………………………22

1.     Arguments …………………………………………22

2.     Applicable Law ………………………………………23

3.     Analysis ……………………………………………………23

IV.     CONCLUSION………………………………………………24

This matter is before the Court on plaintiff's motion for preliminary injunction. (Doc. 5). Defendants timely resisted. (Doc. 10). Plaintiff timely replied. (Doc. 13). The Court held oral argument on June 30, 2023. (Doc. 15). For the following reasons, the Court **denies** plaintiff's motion.

## I. BACKGROUND

The Court's factual findings are based on plaintiff's complaint and the parties' sworn declarations and exhibits submitted in support of their positions. The Court's factual findings here are provisional and not binding in future proceedings. *See Univ. of Tex. v. Camenisch*, 451 U.S. 390, 395 (1981) ("[F]indings of fact and conclusions of law made by a court granting a preliminary injunction are not binding at trial on the merits[.]") (citations omitted); *SEC v. Zahareas*, 272 F.3d 1102, 1105 (8th Cir. 2001) (same). Affidavits submitted at the preliminary injunction phase need not meet the requirements of affidavits under Rule 56(c)(4), but courts may consider the "competence, personal knowledge and credibility of the affiant" in determining the weight to give the evidence. *Bracco v. Lackner*, 462 F. Supp. 436, 442 n.3 (N.D. Cal. 1978) (citing 11A CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE § 2949)). The Court will discuss additional facts as they become relevant to its analysis.

In September 2021, plaintiff began emailing officials of defendant Cedar Rapids Community School District ("defendant District"). (Docs. 10, at 3; 10-1, at 60). On November 8, 2021, plaintiff sent an email entitled "Meeting" to defendant District's Board of Education, then-Superintendent Noreen Bush, and the District's Human Resources Department. (Doc. 10-1, at 8-15). This email was sent to others, including Iowa legislators and media outlets. (*Id.*, at 8-9). It "officially and formally warned" that defendant District's masking requirements violated the law, criticized its mask and vaccination policy and stated its employees and Board members were vulnerable to jail time and civil liability. (*Id.*, at 11). It further stated: "If you mask or vaccinate our children again without our 'Informed Consent', I promise you, there will be no lengths

to which I will [not] go to bring this fight to your front door!" (*Id.*, at 14). Plaintiff specifically addressed Board member defendant Borcherding, stating that "since you are the 'Expert' in Psychology with your psychology degree with an emphasis in 'Child Development', I will make sure that you are incarcerated . . .." (*Id*). On November 14, 2021, plaintiff sent another email to the community disparaging the motivations of the District. (*Id.*, at 2).

On November 15, 2021, defendant District held a school board meeting. (Doc. 1, at 2-3).[1] Plaintiff attended the meeting and followed the procedures to speak at the meeting by signing up to speak during the public comment period and then speaking for his allotted five minutes. (*Id.*, at 3). During this time, he disparaged defendant Borcherding and taunted her as "Miss Psychology," specifically stating "Miss Psychology down there doesn't seem to want to tell you people what's going on with our kids." (Doc. 10, at 4) (citing Nov. 15 Recording, at 35:19-40:21). Defendant Borcherding stated in an affidavit that she received several emails from plaintiff in the fall and winter of 2021, felt personally targeted by plaintiff, and delayed attending a professional conference in November of 2021 because she did not want her children home without her. (Doc. 14-2, at 2).

On November 22, 2021, plaintiff met defendant Bush—the then-superintendent of the District—at her office to discuss his complaints in more detail, bringing his wife and their son, and discussing the district's policies with defendant Bush. (Doc. 1, at 3). Defendant Bush apparently did not express concern to plaintiff about his behavior during the November 15, 2021 meeting. (*Id.*).

---

[1] Facts about the November 15, 2021 meeting are also taken from the following public recording. EngageCRschools, *Board of Education Meeting – November 15, 2021*, YOUTUBE (Nov. 15, 2021) https://www.youtube.com/watch?v=imtFBuIhQeA&t=2096s) ("Nov. 15 Recording").

On December 13, 2021, defendant District held another meeting. (*Id.*, at 3, n.1).[2] Plaintiff spoke at this meeting, but also recruited other individuals to yield additional speaking time to him. (Doc. 10, at 4) (citing Dec. 13 Recording, at 31:08-1:00:00). The school board members and employees did not register objections to this practice but had previously indicated there would be no dialogue between the school board members and the speakers during their comments. (*Id.*; Dec. 13 Recording at 14:56). They also requested the attendees refrain from inappropriate language and outbursts out of respect for all attendees. (Dec. 13 Recording at 14:56). During plaintiff's comments, however, plaintiff raised his voice, made several accusations, and ended his comments as follows: "Take that vote [on the mask requirement] tonight, Mr. President. If you don't, we're comin." (Doc. 10, at 5) (citing Dec. 13 Recording at 1:00:44). Plaintiff also remarked he "was not bound to [attorney] procedures and rules" and was "able to do things they are not." (Doc. 10-1, at 36). Before and after plaintiff's comments, other attendees criticized the district's masking and vaccination policy, including Craig Seeley, Kurt Hancock, and Julia Casey Mariane. (Dec. 13 Recording at 17:30, 26:40, and 1:02:24). Several attendees then led a "take a vote" chant. (Doc. 13, at 5); (Dec. 13 Recording at 1:12:46).

Testimony indicates plaintiff, in addition to speaking, tried to approach the Board table during a recess to demand they vote on the mask restriction. (Docs. 14-1, at 2; 14-2, at 2). This area was not captured on video during this recess. (Dec. 13 Recording at 1:13:28-1:23:31). A photograph taken during the board meeting shows plaintiff standing close to and speaking with then-superintendent Bush in a conversation that included another attendee and a police officer. (Docs. 13; 13-1; 13-2).

---

[2] Facts about the December 13, 2021 meeting are also taken from the following public recording. EngageCRschools, *Board of Education Meeting – December 13, 2021*, YOUTUBE (Dec. 13, 2021) https://www.youtube.com/watch?v=K13ELF-a3tE&t=1860s) ("Dec. 13 Recording").

On December 22, 2021, plaintiff had a certified letter delivered to each Board Member's home address. (Doc. 10-1, at 22). The letter stated that in the absence of the vote demanded at the meeting, plaintiff would be moving forward with "criminal proceedings, impeachment, and constitutional violations" that defendants allegedly committed. (Doc. 10-1, at 23). The letter also provided that unless the recipients of the letter resigned by the end of the calendar year, plaintiff would "continue with the criminal and civil lawsuits[.]" (*Id.*, at 24). Plaintiff further wrote: "I strenuously urge you to reread your oath of office, you have egregiously violated it and it is time for you to acknowledge it and receive just punishment." (*Id*, at 23). According to affidavits, these letters were delivered at odd hours and at night. (Doc. 14-1, at 2).

On January 10, 2022, defendant District had a no trespass notice served on plaintiff. (Doc. 1., at 5; 1-1, at 2). Defendants assert the trespass notice arose out of plaintiff's allegedly threatening behavior. (Doc. 10-2, at 2). The notice "immediately excludes [plaintiff] from appearing on any Cedar Rapids Community School District premises effective January 10, 2022." (Doc. 1-1, at 2). The notice explained it was "a result of your actions during the November 15, 2021 and December 13, 2021 Board of Education Meetings held at the Educational Leadership & Support Center which included disruptive and threatening behavior towards CRCSD school board members and staff." (*Id.*). It further states "[plaintiff's] actions interfere with our goal to maintain a safe, secure, and orderly District environment and violate District Policy 1007 'Conduct on School District Premises' and Regulation 1002.2 'Visitors to District' and Iowa Code Chapter 723 and 716.7(2)(a) [.]" (*Id.*). It also refers to Policy 1007's provisions that "[a]busive, threatening, or inappropriate, verbal or physical conduct of individuals directed at . . . officials . . . will not be tolerated." (*Id.*, at 3). The notice further stated plaintiff could communicate with District School Board members in writing. (*Id*). As a parent, plaintiff could communicate directly with Mr. Stephen Probert of Hiawatha Elementary School. (*Id.*).

6

Plaintiff moved their child to a neighboring school district and did not attend further board meetings at that District. (Doc. 1, at 7, 8). More than a year and a half later, on May 17, 2023, plaintiff brought a retaliation claim, asserting defendants retaliated against his speech at the Board meetings. (*Id.*, at 9). Plaintiff also brought a claim asserting defendants violated the Iowa Open Meetings Act by issuing a no-trespass notice against plaintiff. (Doc. 1, at 10).

## II.    PRELIMINARY INJUNCTION STANDARD

Plaintiff seeks to prevent the enforcement of the District's no trespass notice during the pendency of litigation. (Doc. 5, at 1). To prevail on a motion for a preliminary injunction, a party must establish: "(1) the threat of irreparable harm to the movant; (2) the state of balance between this harm and the injury that granting the injunction will inflict on other party litigants; (3) the probability that movant will succeed on the merits; and (4) the public interest." *Dataphase Sys., Inc. v. C L Sys., Inc.*, 640 F.2d 109, 113 (8th Cir. 1981); *Winter v. Nat. Res. Def. Couns., Inc.*, 555 U.S. 7, 20 (2008). The movant bears the burden of establishing the propriety of a preliminary injunction. *Goff v. Harper*, 60 F.3d 518, 520 (8th Cir. 1995). "[A] preliminary injunction is an extraordinary and drastic remedy, one that should not be granted unless the movant, by a clear showing, carries the burden of persuasion." *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997) (emphasis original) (quoting 11A CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE § 2948 (2d ed. 1995)). "[T]he burden on the movant is heavy, in particular where . . . 'granting the preliminary injunction will give [the movant] substantially the relief it would obtain after a trial on the merits.'" *United Indus. Corp. v. Clorox Co.*, 140 F.3d 1175, 1179 (8th Cir. 1998) (second alteration in original) (quoting *Sanborn Mfg. Co. v. Campbell Hausfeld/Scott Fetzer Co.*, 997 F.2d 484, 486 (8th Cir. 1993)).

### III.    ANALYSIS

Because the absence of irreparable harm is fatal to a motion for preliminary injunction, the Court will first address the threat of irreparable harm. The Court will then discuss the remaining *Dataphase* factors. *See Dataphase*, 640 F.2d at 113, n.9.

In sum, the Court finds plaintiff will not suffer irreparable harm absent this preliminary injunction and also finds plaintiff does not have a likelihood of success on the merits on the present record, and that the balance of harms and public interest weigh against granting a preliminary injunction. As a result, the Court **denies** plaintiff's motion.

### A.    Irreparable Harm

The Court finds plaintiff will not suffer irreparable harm absent a preliminary injunction.

### 1.    Applicable Law

"[T]o warrant a preliminary injunction, the moving party must demonstrate a sufficient threat of irreparable harm." *Wachovia Secs., L.L.C. v. Stanton*, 571 F. Supp. 2d 1014, 1044 (N.D. Iowa 2008) (citation omitted). The movant must show more than the mere possibility that irreparable harm will occur. *TrueNorth Co., L.C. v. TruNorth Warranty Plans of N. Am.*, *LLC*, 353 F. Supp. 3d 788, 801 (N.D. Iowa 2018). Rather, the movant must show it is "likely to suffer irreparable harm in the absence of preliminary relief." *Winter*, 555 U.S. at 20. Thus, "[s]peculative harm does not support a preliminary injunction." *S.J.W. ex rel. Wilson v. Lee's Summit R-7 Sch. Dist.*, 696 F.3d 771, 779 (8th Cir. 2012); *see also Novus Franchising, Inc. v. Dawson*, 725 F.3d 885, 895 (8th Cir. 2013) ("[T]o demonstrate irreparable harm, a party must show that the harm is certain and great and of such imminence that there is a clear and present need for equitable relief." (quoting *Iowa Utils. Bd. v. Fed. Commc'ns Comm'n*, 109 F.3d 418, 425 (8th Cir. 1996))). "The failure to show irreparable harm is, by itself, a sufficient ground upon which to deny a preliminary injunction[.]" *Gelco Corp. v. Coniston Partners*, 811 F.2d 414, 418 (8th Cir. 1987); *see also Dataphase*, 640 F.2d at 113, n.9

("[T]he absence of a finding of irreparable injury is alone sufficient ground for vacating the preliminary injunction.").

### 2. Analysis

Plaintiff argues that he has suffered irreparable harm because the deprivation of First Amendment freedoms always constitutes irreparable injury. (Doc. 5-1, at 7) (citing *Elrod v. Burns*, 427 U.S. 347, 373-74 (1976); *see also Child Evangelism Fellowship of Minn. v. Minneapolis Special Sch. Dist. No. 1*, 690 F. 3d 996, 1004 (8th Cir. 2012). Plaintiff also argues the no trespass notice prevented him from fully participating in his child's school activities or from attending other school functions. (Doc. 5-1, at 5).

Defendants resist, arguing there is no immediate irreparable injury because plaintiff "waited more than sixteen months to bring this lawsuit and has provided no justification for why injunctive relief is now immediately required." (Doc. 10, at 17). Defendants point to plaintiff no longer having a child enrolled in the District, and to school board meetings being live-streamed, recorded, and posted online, as well as to plaintiff's lack of substantive communications with defendants since January 10, 2022. (*Id.*).

The Supreme Court has held "[t]he loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury." *Elrod*, 427 U.S. at 373. Courts, however, do not automatically issue preliminary injunctions based on this holding. *Meranelli v. Minnesota*, No. 22-CV-946 (KMM/DTS), 2022 WL 1744773, at *2 (D. Minn. May 31, 2022); *Wendt v. City of Denison, Iowa*, No. C16-4130-LTS, 2017 WL 2484101, at *6 (N.D. Iowa June 8, 2017). The irreparable harm factor requires a clear and present need for equitable relief, and weighs against a preliminary injunction when a harm has already occurred and can be remedied through damages. *Wendt*, 2017 WL 2484101, at *6; *S.J.W. ex rel. Wilson*, 696 F.3d at 778; *CDI Energy Servs. v. W. River Pumps, Inc.*, 567 F.3d 398, 403 (8th Cir. 2009). Accordingly, the Southern District of Iowa found a lack of irreparable harm absent evidence of a threat of future

9

harm. *See Gomez v. Allbee*, 134 F. Supp. 3d 1159, 1180-81 (S.D. Iowa 2015). Further, the Court recently denied a motion for preliminary injunction absent evidence that the defendant (1) interfered with the plaintiff's past efforts to exercise their First Amendment rights or (2) was threatening to restrain their future efforts to exercise those rights. *Wendt*, 2017 WL 2484101, at *6. Plaintiff thus must show the claimed First Amendment interests are threatened or in fact being impaired at the time relief is sought. *See Ness v. City of Bloomington*, 437 F. Supp. 3d 714, 722–23 (D. Minn. 2020); *Elrod*, 427 U.S. at 373–74).

Here, the no trespass notice bars plaintiff from appearing on any Cedar Rapids Community School District's premises, including property or facilities or any property owned or controlled by defendant District. (Doc. 1-1, at 2). Even though the school board meetings are live-streamed, recorded, and posted online, defendants do not show that plaintiff can make his views heard at those meetings in a remote capacity. (*See* Doc. 10, at 17). As a result, the no-trespass notice prevents plaintiff from making his views heard at the District's public school board meetings at the time he seeks relief before the Court.

On the other hand, the record does not indicate plaintiff's attempt or intent to return to the District premises during the pendency of the litigation. Plaintiff's child is no longer attending school in the Cedar Rapids School District. Plaintiff sued the District over a year and a half after receiving the no-trespass notice. (Doc. 1, at 5, 11). Thirty eight school board meetings have passed. (Doc. 1, at 1, at 11). The record does not indicate plaintiff even communicating with defendants after the no-trespass notice. At oral argument, plaintiff's attorney stated that plaintiff desired to attend school board elections in November, but that is not supported in the submissions. Thus, although the no trespass notice could impair plaintiff's First Amendment interests, he has failed to show any effort in the last 16 months to exercise his First Amendment rights and his asserted desire to do so in November is not supported by the record and is speculative,

at best, given he does not have a child in the district. Thus, the Court finds plaintiff has failed to show irreparable harm. If, in fact, defendants violated plaintiff's First Amendment rights in the past, that can be remedied by money damages. Injunctive relief for speculative impairment of plaintiff's First Amendment rights is not called for on this record at this time.

## B. Likelihood of Success on the Merits

The Court finds plaintiff does not have a fair chance of prevailing on his retaliation claim, because the present record does not sufficiently show his speech was protected nor that defendants' no-trespass notice was motivated in part by the content of his speech.[3]

### 1. Applicable Law

"[D]istrict courts should still apply the familiar 'fair chance of prevailing' test where a preliminary injunction is sought to enjoin something other than government action based on presumptively reasoned democratic processes," *Planned Parenthood Minn., N.D., S.D. v. Rounds*, 530 F.3d 724, 732 (8th Cir. 2008) (en banc), "with a 'fair chance of prevailing' on the merits, with a 'fair chance' meaning something less than fifty percent," id. at 730. *Gomez*, 134 F. Supp. 3d at 1173; *Lindell v. United States*, No. 22-CV-2290 (ECT/ECW), 2022 WL 16647786, at *9 (D. Minn. Nov. 3, 2022); *Parents Defending Educ. v. Linn-Mar Cmty. Sch. Dist.*, 629 F. Supp. 3d 891, 906 (N.D. Iowa 2022).

To establish a First Amendment retaliation claim, a plaintiff must show that "(1) he engaged in a protected activity, (2) the government official took adverse action against him that would chill a person of ordinary firmness from continuing in the activity,

---

[3] Because the Court finds plaintiff does not have a fair chance of prevailing on its claim at this stage, it does not reach defendants' immunity arguments on this motion. Further, even if some defendants would be protected by qualified immunity, the school district itself would not be, rendering the issue irrelevant for purposes of determining whether a preliminary injunction is appropriate.

and (3) the adverse action was motivated at least in part by the exercise of the protected activity." *Rinne v. Camden Cnty.*, 65 F.4th 378, 383 (8th Cir. 2023) (quoting *Revels v. Vincenz*, 382 F.3d 870, 876 (8th Cir. 2004)). Criticism of public officials and the administration of governmental policies "lies at the heart of speech protected by the First Amendment." *Id.*, at 383 (quoting *Williams v. City of Carl Junction*, 480 F.3d 871, 874 (8th Cir. 2007)). Criticism of a governmental policy at public meetings is therefore protected by the First Amendment. *Id.*

True threats, however, are not protected by the First Amendment. *Doe v. Pulaski Cnty. Special Sch. Dist.*, 306 F.3d 616, 621–23 (8th Cir. 2002); *Counterman v. Colorado*, 143 S. Ct. 2106, 2113 (2023); *United States v. Amaya*, 949 F. Supp. 2d 895, 909 (N.D. Iowa 2013). Although there may be some political or social value associated with threatening words in some circumstances, the government has an overriding interest in "protecting individuals from the fear of violence, from the disruption that fear engenders, and from the possibility that the threatened violence will occur." *Id.* (citing *R.A.V.*, 505 U.S. at 388); *Watts v. United States*, 394 U.S. 705 (1969). To determine what constitutes a "true threat," "[the fact-finder] must view the relevant facts to determine whether the recipient of the alleged threat could reasonably conclude that it expresses a determination or intent to injure presently or in the future." *United States v. Ivers*, 967 F.3d 709, 718 (8th Cir. 2020) (quoting *Pulaski Cnty. Special Sch. Dist.*, 306 F.3d at 622) (cleaned up). The parties need not prove subjective intent. *United States v. Mabie*, 663 F.3d 322, 333 (8th Cir. 2011); *Counterman*, 143 S. Ct. at 2113. This decision is made "in the context of the totality of the circumstances in which the communication was made." *United States v. Bellrichard*, 994 F.2d 1318, 1323 (8th Cir. 1993). Relevant factors include:

> 1) [T]he reaction of those who heard the alleged threat; 2) whether the threat was conditional; 3) whether the person who made the alleged threat communicated it directly to the object of the threat; 4) whether the speaker had a history of making threats against the person purportedly threatened;

and 5) whether the recipient had a reason to believe that the speaker had a propensity to engage in violence.

*Pulaski Cnty. Special Sch. Dist.*, 306 F.3d at 623.

### 2. Analysis

On this record, plaintiff does not have a fair chance of showing he engaged in a protected activity or that defendants' no-trespass notice was motivated at least in part by his speech. The Court thus finds plaintiff does not have a likelihood of success on the merits at this stage.

### C. Protected Activity

Plaintiff argues his conduct at the board meetings was protected activity. (Doc. 5-1). Defendants argue plaintiff's conduct was not protected because it comprised disruptive threats which intimidated Board members. (Doc. 10, at 10). In reply, plaintiff argues his conduct does not amount to a "true threat" that removes it from First Amendment protections. (Doc. 13, at 3); *Pulaski Co. Special Sch. Dist.*, 306 F.3d 624; *Watts v. U.S.*, 394 U.S. 705, 708 (1969) (per curiam); *Snyder v. Phelps*, 562 U.S. 443, 458 (2011).

Again, speech is a "true threat" and thus unprotected if the relevant facts show that the recipient of the alleged threat could reasonably conclude the speech expresses a determination or intent to injure presently or in the future. *Ivers*, 967 F.3d at 718 (8th Cir. 2020) (cleaned up). This decision is made "in the context of the totality of the circumstances in which the communication was made." *Bellrichard*, 994 F.2d at 1323.

During the November 15, 2021 meeting, plaintiff disparaged defendant Borcherding and taunted her as "Miss Psychology," specifically stating "Miss Psychology down there doesn't seem to want to tell you people what's going on with our kids." (Doc. 10, at 4) (citing "Nov 15 Recording" at 35:19-40:21). During plaintiff's comments at the December 13 Board Meeting, he raised his voice, made several accusations, and ended as follows: "Take that vote [on the mask requirement] tonight,

Mr. President. If you don't, we're comin." (*Id.*, at 5) (citing Dec. 13 Recording at 1:00:44). Plaintiff also remarked he "was not bound to [attorney] procedures and rules" and was "able to do things they are not." (Doc. 10-1, at 36).

For purposes of evaluating whether plaintiff's statements are true threats, the emails plaintiff sent to defendants before the December 13, 2021 meeting are part of "the context of the totality of the circumstances in which the communication was made[.]" *Ivers*, 967 F.3d at 719. The Court rejects plaintiff's argument that defendants could not fear plaintiff's emails if their no-trespass notice permitted written communication. (Doc. 13, at 6). It is not necessary for the emails themselves to be dangerous for defendants to fear that the emails, combined with plaintiff's conduct at the meetings, suggest further physical threats.

Turning to the *Pulaski* factors, defendants who heard plaintiff's comments reacted by expressing fear. Testimony states "[p]laintiff's behavior is the only time in my service as a public official I have felt myself and my fellow elected officials to potentially be in danger." (Doc. 10-2, at 4). Testimony also states "[a]s a result of [plaintiff]'s conduct, [defendant] District had a duress alarm installed in the Board room and worked with law enforcement to create a system to signal when someone needed to be removed." (Doc. 14-1, at 3).

Plaintiff's alleged threats were conditional as well, demanding defendants "[t]ake that vote tonight, Mr. President. If you don't, we're comin." (Doc. 10, at 5) (citing Dec. 13 Recording at 1:00:44).

Further, these statements were made directly to the defendants at the public meetings, and called out defendant Borcherding by name. (*Id.*, at 4) (citing "Nov 15 Recording" at 35:19-40:21). Although plaintiff and any other speaker would ordinarily address defendants during the public comment section, the Court finds calling out defendant Borcherding specifically moves this conduct closer to a threat.

The record so far indicates plaintiff has a history of making alleged threats prior to the December 13, 2021 meeting. In September 2021, plaintiff began emailing officials of defendant District, criticizing the District's mask and vaccination policy and stated the District employees and Board members were vulnerable to jail time and civil liability. (Docs. 10, at 3; 10-1, at 60). Amongst other things, plaintiff threatened to make sure defendant Borcherding was incarcerated. (Doc. 10-1, at 14). On November 14, 2021, plaintiff sent another email to the community, disparaging the motivations of the District. (*Id.*, at 2). Further, defendant Borcherding testified in affidavit that she received several emails from plaintiff in the fall and winter of 2021. (Doc. 14-2, at 2).

On this record, there remains a dispute whether defendants had reason to believe plaintiff "had a propensity to engage in violence." *Pulaski Cnty. Special Sch. Dist.*, 306 F.3d at 623. Defendant Borcherding testified she "was told [plaintiff] had previously threatened violence in another school district" but did not explain whether she heard this before or after plaintiff's comments. (Doc. 14-2, at 3). Before that, the present record indicates plaintiff used only aggressive rhetoric in previous emails, amounting only to electoral action, legal action, financial consequences, penal consequences, and dramatic and biblical language, not to direct allusions of violence. (Docs. 10, at 3; 10-1, at 14, 60). Plaintiff, however, remarked he "was not bound to [attorney] procedures and rules" and was "able to do things they are not." (Doc. 10-1, at 36). Defendants could reasonably predict an escalating pattern leading to violence.

On this record, although it is a close call, a fact finder could find defendants could reasonably believe plaintiff's speech showed a determination or intent to injure them presently or in the future. Thus, plaintiff does not have a fair chance of showing his speech was protected and that he has a likelihood of success on the merits, which weighs against granting a preliminary injunction.

### D.    Motivation

Even if plaintiff's conduct did not amount to "true threats," the Court would find that on this record, plaintiff does not have a fair chance of showing "the adverse action was motivated at least in part by the exercise of the protected activity." *Rinne*, 65 F.4th, at 383 (internal quotations omitted).    "Discrimination against speech because of its message is presumed to be unconstitutional," and viewpoint discrimination is "an egregious form of content discrimination." *Wishnatsky v. Rovner*, 433 F.3d 608, 611 (8th Cir. 2006) (citing *Rosenberger v. Rector & Visitors of the Univ. of Va.*, 515 U.S. 819, 828–29 (1995)).    Plaintiff argues the no-trespass notice was motivated at least in part by his speech challenging defendants' conduct. (Doc. 5-1, at 6-7).    Defendants argue the no-trespass notice was not motivated by the content of his speech but by his disruptive behavior. (Doc. 10, at 10-12).    The Court finds that on the present record, plaintiff does not have a fair probability to prove the no-trespass notice was "motivated at least in part" by plaintiff's speech.    *See Rinne*, 65 F.4th at 383.

Plaintiff first does not have a fair chance of showing at this stage that defendants singled him out for his views.    At the December 13, 2021 meeting, plaintiff was not alone in criticizing defendants' actions with regards to vaccinations and masking policies. Before and after plaintiff's comments, other attendees criticized the district's masking and vaccination policy, including Craig Seeley, Kurt Hancock, and Julia Casey Mariane. (Dec. 13 Recording at 17:30, 26:40, and 1:02:24).    Plaintiff, however, assumed a leadership position over at least some detractors who yielded their time to him (Doc. 1, at 3, n.1), to the point he was considered a ringleader.    (Doc. 10-2, at 3).    At oral argument, plaintiff argues the no-trespass notice only targeted him but was intended to make an example that would silence other critics of the vaccinations and masking policies. Defendants argued other critics did not yield their time to him, still argued, and still did not receive no trespass notices.    The present record does not show that defendants intended or planned to ban others who spoke out against masks, or that defendants

16

expected that issuing the no-trespass notice against plaintiff would prevent others from speaking out against the masking policy. Thus, at this stage, plaintiff cannot show the no trespass notice was motivated by the content of his speech.

Plaintiff also does not have a fair chance at this stage of showing his conduct was not disruptive. The Court has already discussed why plaintiff's speech at the December 13, 2021 meeting may constitute a true threat, but will provide further analysis.

Courts have permitted school boards to ban and exclude controversial speakers on the grounds of disruptive behavior. In resolving a First Amendment retaliation claim arising out of a no-trespass letter, a court found plaintiff had not proved that the no-trespass ban was issued because of his protected speech, as opposed to his threats and antagonistic behavior when the plaintiff made allusions to violence, "'called a public school a 'target rich environment,' and 'made a reference to public officials meeting their creator,' among other concerning statements." *Davison v. Rose*, 19 F.4th 626, 637 (4th Cir. 2021). Another court found defendants did not discriminate against plaintiff's speech by removing him due to "inappropriate and disruptive behavior" that violated its board policies. *Dyer v. Atlanta Indep. Sch. Sys.*, 852 Fed. App'x 397, 402 (11th Cir. 2021) (unpublished). Similarly, a court upheld the exclusion of a plaintiff on the grounds of abusive, abhorrent, and hate-filled comments after he refused to stop after more warnings, and "was free to return to future meetings – demonstrating that it was his actions, not his views being sanctioned." *Moms for Liberty - Brevard Cnty., FL v. Brevard Pub. Sch.*, 582 F. Supp. 3d 1214, 1220 (M.D. Fla. 2022), aff'd, No. 22-10297, 2022 WL 17091924 (11th Cir. Nov. 21, 2022). Elsewhere, a court found no-trespass notices "content neutral" when they "were justified by concern that [the plaintiff] posed a danger to school staff[.]" *Cyr v. Addison Rutland Supervisory Union*, 60 F. Supp. 3d 536, 547 (D. Vt. 2014) (later explaining the restrictions were not narrowly tailored). Also, another court recognized a "rule against personal and slanderous remarks, like other rules of decorum, serves the important governmental interest of preventing

disruptions to its meetings." *Scroggins v. City of Topeka, Kan.*, 2 F. Supp. 2d 1362, 1373 (D. Kan. 1998) (explaining "emotionally charged personal attacks could antagonize and even incite others and that a rule restricting such attacks is both a rational and reasonable means for achieving . . . orderly, efficient, effective and dignified meetings.").

Here, plaintiff made emotionally charged attacks, for example repeatedly belittling one of the Board Members by calling her "Ms. Psychology" and singling her out. (Doc. 10, at 4) (citing Nov. 15 Recording, at 35:19-40:21); (*see also* Dec. 13 Recording at 1:00:44). Defendants could adequately consider these statements as disruptive, like those in *Scroggins*. 2 F. Supp. 2d at 1373.

Like in *Dyer*, where the court found the defendants did not discriminate against plaintiff's speech by removing him for policy-violating behavior, 852 Fed. App'x at 402, defendants' no-trespass letter amply cited the Board policies. (Doc. 1-1, at 3). The no-trespass notice stated plaintiff's actions "interfere with [their] goal to maintain a safe, secure, and orderly District environment and violate District Policy 1007 'Conduct on School District Premises' and Regulation 1002.2 'Visitors to District' and Iowa Code Chapter 723 and 716.7(2)(a) [.]" (*Id.*, at 2.). They also refer to Policy 1007's provisions that "[a]busive, threatening, or inappropriate, verbal or physical conduct of individuals directed at . . . officials . . . will not be tolerated." (*Id.*, at 3).

Unlike in *Moms for Liberty*, where the plaintiff "was free to return to future meetings[,]" the no-trespass notice does not explain when or if plaintiff can return to future meetings. 582 F. Supp. 3d at 1220. In that sense, the notice is not narrowly tailored. The notice does permit plaintiff to continue to communicate with the board, however, but it suppresses plaintiff's ability to speak in public. In contrast, again, defendants did not exclude others from criticizing their policies. (Dec. 13 Recording at 17:30, 26:40, and 1:02:24). On this record, then, it is reasonable to conclude defendants' exclusion of plaintiff was motivated by his disruptive behavior at the meeting and the

threat of future disruption, and thus "it was his actions, not his views[,] being sanctioned." *Id.*

Plaintiff's statements also do not clearly match the allusions of violence that justified the no-trespass letter issued in *Davison*. *Davison*, 19 F.4th at 637. Again, however, during plaintiff's speech, he remarked he "was not bound to [attorney] procedures and rules" and was "able to do things they are not." (Doc. 10-1, at 36). Further, after the meeting, plaintiff mailed a certified letter to each Board Member's home address, which threatened legal actions and wrote: "I strenuously urge you to reread your oath of office, you have egregiously violated it and it is time for you to acknowledge it and receive just punishment." (*Id.*, at 23). According to affidavits, these letters were delivered at odd hours and at night. (Doc. 14-1, at 2).

The Court further rejects plaintiff's argument that the lack of admonitions from the board members or then-superintendent Bush indicates that he was not disruptive. (Doc. 5-1, at 5-6). At the December 13, 2021 meeting, the school board members had previously indicated there would be no dialogue between the school board members and the speakers during their comments. (*Id.*; Dec. 13 Recording, at 14:56). The record does not show the tenor of plaintiff's meeting with then-superintendent Bush, let alone whether plaintiff received an admonition there, or whether plaintiff would have received an admonition in any case.

The parties dispute whether plaintiff could reasonably have threatened defendants given that defendant Bush engaged in a close conversation with plaintiff at the meeting. Plaintiff argues defendants could not have feared plaintiff because they confronted him not with "a police officer or security guard" but with a superintendent. (Doc.13, at 6). But a photograph taken during the board meeting shows plaintiff and then-superintendent Bush spoke in the presence of a police officer. (Doc. 13; 13-1; 13-2). Although plaintiff submitted two affidavits that characterize this interaction as speaking "in a civil manner" (Docs. 13-1; 13-2), the record is unclear at this stage whether the police officer was

summoned or stepped forward due to perceived threats or whether his presence was routine.

Other facts around the December 13, 2021, meeting remain too disputed to indicate whether defendants issued the no-trespass notice based on plaintiff's disruptive behavior and not on his speech. The parties first dispute whether plaintiff was responsible for or even participated in the "take a vote" chant after the end of the public comments, which Board President Tominsky feared could have turned violent and disruptive. Defendants assert plaintiff led the group who made the chant. (Doc. 10-2, at 3) (citing Dec. 13 Recording at 1:12:38-1:13:28). Plaintiff disputes this, submitting testimony that he did not participate in, let alone lead, the chant demanding a vote on the mask restriction. (Docs. 13, at 5; 13-2). The video indicates that a woman's voice dominated the chant, but does not show the speakers on screen. (Dec. 13 Recording at 1:12:38-1:13:28). Even so, the language of "take that vote" matches plaintiff's language during his speech. Defendants could reasonably infer the potential disruption of that chant stemmed from plaintiff's other behavior. At this stage and with this limited disputed evidence, the behavior around the chant does not create a fair chance for plaintiff to prevail.

The parties also dispute whether plaintiff approached the Board table during the Board meeting. Defendants testify plaintiff, in addition to speaking, tried to approach the Board table during a recess to demand they vote on the mask restriction. (Docs. 14-1, at 2; 14-2, at 2). The video did not display the meeting during this recess. (Dec. 13 Recording at 1:13:28-1:23:31). The Court thus cannot make a finding at this stage.

On this record, then, plaintiff does not have a fair chance of showing defendants' no-trespass notice was motivated by his speech. Plaintiff, thus, does not have a likelihood of success on the merits, and that factor weighs against the grant of a preliminary injunction.

20

### E. Balance of Harms

The Court finds the balance of harms weighs against granting a preliminary injunction.

#### 1. Applicable Law

"[T]he balance of harms analysis examines the harm of granting or denying the injunction upon both of the parties to the dispute and upon other interested parties, including the public." *Wachovia Secs., L.L.C.*, 571 F. Supp.2d at 1047. It is not the same analysis as the irreparable harm analysis. *Id.* The balance of harms analysis considers several factors including the threat of each parties' rights that would result from granting or denying the injunction, the potential economic harm to the parties, and whether the defendant has taken voluntary remedial action. *Id.* "[A]n illusory harm to the movant will not outweigh any actual harm to the non-movant." *Frank N. Magid Assocs., Inc. v. Marrs*, No. 16-CV-198-LRR, 2017 WL 3091457, at *5 (N.D. Iowa Jan. 9, 2017) (quoting *Interbake Foods, L.L.C. v. Tomasiello*, 461 F. Supp. 2d 943, 976–77 (N.D. Iowa 2006)).

#### 2. Analysis

The Court finds the balance of harms weighs against granting the preliminary injunction. The balance of harms only considers those harms that would result were the Court to issue an injunction. *Parents Defending Educ.*, 629 F. Supp. 3d at 904.

Plaintiff makes no specific argument for the balance of harms, arguing only that "the nature of the constitutional violation here" suffices to meet the balance of the harms factor. (Docs. 5-1, at 7; 13). Defendants argue the balance of the harms weighs in favor of defendants, because plaintiff no longer has a student in the District and need not be on District property for that purpose, and can already speak by corresponding with board members in writing and viewing board meetings online and livestreamed. (Doc. 10, at 18).

Here, defendants may suffer harm if the preliminary injunction is granted. Absent the no trespass notice, plaintiff may return to school board meetings and speak on his views in an allegedly threatening manner. At this stage, the facts indicate plaintiff is willing to create allegedly threatening scenarios at these public board meetings.

Absent an injunction, plaintiff will suffer the potential harm of being unable to speak at Board meetings. This potential harm is ongoing. Nevertheless, it is not so great as to outweigh the harms to defendants above. Again, plaintiff has no child attending school in the District and 16 months passed without him ever attempting to communicate with the District. Further, plaintiff may still communicate with board members in writing. (Doc. 1-1, at 2). Plaintiff did so after the December 13, 2021 meeting. (Docs. 10-1, at 22; 14-1, at 2). Plaintiff may also recruit sympathetic others to speak for his views again. Plaintiff has less need to enter school property for other reasons during the pending litigation; there is no allegation that he intends to re-enroll his child within the District. Thus, at this stage plaintiff's inability to appear on defendants' properties for other school purposes poses "an illusory harm" that does not outweigh potential actual harm to the non-movant. *Frank N. Magid Assocs.*, 2017 WL 3091457, at *5 (N.D. Iowa Jan. 9, 2017).

Thus, the balance of harms weighs against granting a preliminary injunction.

### F. Public Interest

The Court finds that the public interest weighs against granting the preliminary injunction.

#### 1. Arguments

Plaintiff asserts that it is always in the public interest to prevent constitutional rights violations. (Doc. 5-1, at 8). Defendants argue the public interest weighs in favor of denying injunctive relief while the matter proceeds to the merits, asserting "the public has a strong interest in ensuring the District can conduct its business free from disruptions and threats." (Doc. 10, at 18).

### 2. Applicable Law

This Court has noted as follows:

> The "public interest" factor frequently invites the court to indulge in broad observations about conduct that is generally recognizable as costly or injurious. However, there are more concrete considerations, such as reference to the purposes and interests any underlying legislation was intended to serve [and] a preference for enjoining inequitable conduct[.]

*Prudential Ins.*, 728 F. Supp. 2d at 1032 (internal citations omitted).

### 3. Analysis

The Court finds the public interest weighs against a preliminary injunction. It is in the public interest to ensure the District can conduct orderly, efficient, and effective meetings free "from the fear of violence, from the disruption that fear engenders, and from the possibility that the threatened violence will occur." *Pulaski Cnty. Special Sch. Dist.*, 306 F.3d at 621–23; *see Scroggins*, 2 F. Supp. 2d at 1373. Indeed, the no trespass notice cites plaintiff's actions as disruptive and threatening behavior towards school board members and staff, interfering with the goal to maintain a "safe, secure, and orderly District environment, and asserted plaintiff's behavior also violated District Policy 1007, Regulation 1002.2, and Iowa Code Chapter 723 and 716.7(2)(a). (Doc. 1-1, at 2).

It is also in the public interest to prevent the chilling of protected speech. At this stage, however, the alleged harms to protected speech are not sufficiently supported by the record and cannot be said to tip the scales in favor of an injunction. Further, the facts so far indicate the conduct in question was not inequitable. Other attendees criticized the mask policy of the Board without delving into plaintiff's rhetoric, and defendants did not issue no-trespass notices against them.

Thus, the public interest weighs against a preliminary injunction.

## IV.    CONCLUSION

For these reasons stated above, the Court **denies** plaintiff's motion for a preliminary injunction.  (Doc. 5).

**IT IS SO ORDERED** this 21st day of July, 2023.

_____
C.J. Williams
United States District Judge
Northern District of Iowa