**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF IOWA**
**CEDAR RAPIDS DIVISION**

| | |
|---|---|
| RUSSELL HOTCHKISS,<br><br>               Plaintiff,<br><br>vs.<br><br>CEDAR RAPIDS COMMUNITY<br>SCHOOL DISTRICT, RUSS BUSH as<br>the successor in interest to NOREEN<br>BUSH, deceased, TAWANA GROVER,<br>JENNIFER BORCHERDING, CINDY<br>GARLOCK, NANCY HUMBLES,<br>DEXTER MERSCHBROCK, JENNIFER<br>NEUMANN, MARCY ROUNDTREE,<br>and DAVID TOMINSKY,<br><br>               Defendants. | No. 23-CV-33-CJW-MAR<br><br><br>**MEMORANDUM OPINION**<br>**AND ORDER** |

_____

**TABLE OF CONTENTS**

I.      FACTUAL SUMMARY ................................................................... 3

II.     STANDARD UNDER FED. R. CIV. P. 12(b)(6) ................................... 5

III.    ANALYSIS ................................................................................ 7

        A.    Iowa Code Chapter 21 ......................................................... 7

        B.    First Amendment Claims ....................................................12

               1.    Individual Capacity Claims ...............................................12

               2.    Official Capacity Claims ...................................................19

C.     Defendant Bush…………………………………………………………21

IV.   CONCLUSION ……………………………………………………………25

This matter is before the Court on defendants' partial motion to dismiss. (Doc. 16). Plaintiff timely resisted. (Doc. 22). Defendants timely replied. (Doc. 25). For the following reasons, the Court **grants-in-part** and **denies-in-part** defendants' motion.

## I.     FACTUAL SUMMARY[1]

Plaintiff lives within the Cedar Rapids Community School District ("District") and had a child enrolled at a District elementary school during the 2021-2022 school year. (Doc. 1, at 2). On November 15, 2021, defendant District held a school board meeting. (*Id.*, at 2–3).[2] Plaintiff attended the meeting and followed the procedures to speak at the meeting by signing up to speak during the public comment period and then speaking for his allotted five minutes. (*Id.*, at 3). Plaintiff spoke about his belief that the District's policies relating to COVID-19 were harmful to his child and others. (*Id.*, at 2–3). The complaint characterizes plaintiff's comments as "pointed" while refraining from "profanity, aggressive language, or any conduct that could be perceived as disruptive or threatening." (*Id.*, at 3). During this time, he called defendant Borcherding "Miss Psychology," specifically stating "Miss Psychology down there doesn't want to seem to tell you people what's going on with our kids." (Nov. 15 Recording, at 35:19-40:21).

A week later, on November 22, 2021, plaintiff met Noreen Bush—the then-superintendent of the District—at her office to discuss his complaints in more detail, bringing his wife and their son, and discussing the District's policies with Bush. (Doc. 1, at 3). In their meeting, Bush did not express concern to plaintiff about his behavior during the board meeting the previous week. (*Id.*).

_____

[1] The facts are taken from plaintiff's complaint, as well as attachments to the complaint and items cited within the complaint.

[2] Facts about the November 15, 2021 meeting are also taken from the following public recording, referenced in the complaint, at 3. EngageCRschools, *Board of Education Meeting – November 15, 2021*, YOUTUBE (Nov. 15, 2021), https://www.youtube.com/watch?v=imtFBuIhQeA&t =2096s) ("Nov. 15 Recording").

On December 13, 2021, defendant District held another meeting. (*Id.*, at 3).[3] Plaintiff spoke at this meeting and recruited other individuals to yield additional speaking time to him, leading to plaintiff speaking for about 29 minutes. (*Id.*, at 3–4) (citing Dec. 13 Recording, at 31:08–1:00:47). The school board members and district employees did not register objections to this practice. (*Id.*, at 4). Plaintiff again criticized the District's policies relating to the COVID-19 pandemic in his comments. (*Id.*). The public comment time was not increased due to plaintiff's extended comments. (*Id.*). Plaintiff's statements "did not violate any plausible rule of decorum for the meeting." (*Id.*). Before and after plaintiff's comments, other attendees also criticized the district's masking and vaccination policy. (Dec. 13 Recording, at, *e.g.*, 17:30, 26:40, 1:02:24, and 1:08:50). Plaintiff ended his comments as follows: "Take that vote [on the mask requirement] tonight, Mr. President. If you don't, we're comin'." (*Id.*, at 1:00:35). Several attendees later led a "take a vote" chant. (*Id.*, at 1:12:46).

On January 10, 2022, the District had a no trespass notice served on plaintiff. (Docs. 1, at 5; 1-1, at 2). The notice "immediately excludes [plaintiff] from appearing on any Cedar Rapids Community School District premises effective January 10, 2022." (Doc. 1-1, at 2). The notice contained an explanation for the District's action, stating it was "a result of [plaintiff's] actions during the November 15, 2021 and December 13, 2021 Board of Education Meetings held at the Educational Leadership & Support Center which included disruptive and threatening behavior towards [District] school board members and staff." (*Id.*). It further stated plaintiff's "actions interfere with our goal to maintain a safe, secure, and orderly District environment and violate District Policy 1007 'Conduct on School District Premises' and Regulation 1002.2 'Visitors to District'

---

[3] Facts about the December 13, 2021 meeting are also taken from the following public recording, referenced in the complaint, at 4. EngageCRschools, *Board of Education Meeting – December 13, 2021*, YOUTUBE (Dec. 13, 2021), https://www.youtube.com/watch?v=K13ELF-a3tE&t=1860s) ("Dec. 13 Recording").

and Iowa Code Chapter 723 and 716.7(2)(a)[.]" (*Id.*). The notice also referred to Policy 1007's provisions that "[a]busive, threatening, or inappropriate, verbal or physical conduct of individuals directed at . . . officials . . . will not be tolerated." (*Id.*, at 3). The notice further stated plaintiff could communicate with District school board members in writing. (*Id.*, at 2). As a parent, plaintiff could communicate directly with Mr. Stephen Probert of Hiawatha Elementary School. (*Id.*).

Because the no trespass notice threatened plaintiff with arrest if he entered District property, he did not attend the next school board meeting, or any of the regularly scheduled school board meetings from that day on. (Doc. 1, at 7). Plaintiff later moved his child to a neighboring school district. (*Id.*, at 7–8). The no trespass notice has not yet been modified or rescinded, and no District official has told plaintiff that he is permitted to be on District property. (*Id.*, at 8).

Noreen Bush died on October 23, 2022. (*Id.*). Defendant Russ Bush is Noreen Bush's surviving spouse. (*Id.*). No estate has been opened for Noreen Bush. (*Id.*). Defendant Tawana Grover succeeded Noreen Bush as District Superintendent. (*Id.*).

On May 17, 2023, plaintiff brought a First Amendment retaliation claim, asserting defendants retaliated against his speech at the board meetings. (*Id.*, at 8–10). Plaintiff also brought a claim asserting defendants violated the Iowa Open Meetings Act by issuing a no trespass order against plaintiff. (*Id.*, at 10–12).

## II.    STANDARD UNDER FED. R. CIV. P. 12(B)(6)

A complaint filed in federal court must contain a "short and plain statement of the claim showing that the pleader is entitled to relief[.]" FED. R. CIV. P. 8(a)(2). Rule 8 does not require "detailed factual allegations." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Nevertheless, it "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A complaint that relies on "naked assertion[s]" devoid of "further factual enhancement,"

"labels and conclusions," or "a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555, 557.

Before filing an answer, a defendant may move to dismiss a complaint for "failure to state a claim upon which relief can be granted" under Federal Rule of Civil Procedure 12(b)(6). To survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter . . . to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (further citation omitted). Courts assess "plausibility" by "'draw[ing] on [their own] judicial experience and common sense.'" *Whitney v. Guys, Inc.*, 700 F.3d 1118, 1128 (8th Cir. 2012) (quoting *Iqbal*, 556 U.S. at 679) (first alteration in original). Also, courts "'review the plausibility of the plaintiff's claim as a whole, not the plausibility of each individual allegation.'" *Id.* (quoting *Zoltek Corp. v. Structural Polymer Grp.*, 592 F.3d 893, 896 n.4 (8th Cir. 2010)).

"[W]hen ruling on a defendant's motion to dismiss, a judge must accept as true all of the factual allegations contained in the complaint." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). The Court must also grant "all reasonable inferences" from the pleadings "in favor of the nonmoving party." *Crumpley-Patterson v. Trinity Lutheran Hosp.*, 388 F.3d 588, 590 (8th Cir. 2004) (further citation omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. Plausibility is not equivalent to probability, but it is something "more than a sheer possibility that a defendant has acted unlawfully." *Id.* "The question . . . is not whether [a plaintiff] might at some later stage be able to prove [its claims]; the question is whether [a plaintiff] has adequately asserted facts (as contrasted with naked legal conclusions) to support his claims." *Whitney*, 700 F.3d at 1129.

When ruling on a motion to dismiss under Rule 12(b)(6), the court is limited in what it may consider. The court may not consider matters outside the pleading when

ruling on a motion to dismiss. *BJC Health Sys. v. Columbia Cas. Co.*, 348 F.3d 685, 687 (8th Cir. 2003). A matter outside the pleading is "any written or oral evidence in support of or in opposition to the pleading that provides some substantiation for and does not merely reiterate what is said in the pleadings." *Gorog v. Best Buy Co.*, 760 F.3d 787, 791 (8th Cir. 2014) (quoting *Gibb v. Scott*, 958 F.2d 814, 816 (8th Cir. 1992)). If the court is presented with a matter outside the pleading, the evidence must be excluded. FED. R. CIV. P. 12(d). Otherwise, the motion becomes a motion for summary judgment, which requires the court to give the parties notice to present material and pertinent evidence for a Rule 56 motion. *Id.*

"Documents [that are] necessarily embraced by the complaint" are not considered outside the pleading. *Ashanti v. City of Golden Valley*, 666 F.3d 1148, 1151 (8th Cir. 2012). A document is necessarily embraced by the pleadings if its "contents are alleged in a complaint and [its] authenticity no party questions, [even if the documents] are not physically attached to the pleading." *Id.*

## III.    ANALYSIS

Defendants make multiple arguments in support of their partial motion to dismiss. (Docs. 16; 16-1). First, defendants argue that plaintiff fails to state a claim under Iowa Code Chapter 21. (Doc. 16-1, at 6-8). Next, defendants argue plaintiff's First Amendment claims against the District officials in their individual capacities fail because they are entitled to qualified immunity, and plaintiff's claims against the officials in their official capacity are duplicative of his claims against the district. (*Id.*, at 8-13). Last, defendants argue plaintiff's claim against defendant Russ Bush is improper because he is an improper party. (*Id.*, at 13).

### A.    Iowa Code Chapter 21

In Count II of his complaint, plaintiff claims that because he "was barred unlawfully from attending school board meetings, those meetings did not meet the

7

definition of an 'open meeting' under Iowa Code § 21.2(3)[.]" (Doc. 1, at 11). Defendants assert plaintiff fails to state a claim under Iowa's Open Meetings Act because plaintiff's complaint contains "no allegation that the District conducted its meetings in violation of the statute, that it held unauthorized closed sessions, or engaged in any activity prohibited by Chapter 21." (Doc. 16-1, at 8).

Chapter 21 of the Iowa Code, the Iowa Open Meetings Act ("IOMA"), governs meetings of governmental bodies required to be open to the public. IOWA CODE § 21.3(1). The Act's stated intent is to "assure, through a requirement of open meetings of governmental bodies, that the basis and rationale of governmental decisions, as well as those decisions themselves, are easily accessible to the people." IOWA CODE § 21.1. Thus, "[a]mbiguity in the construction or application of this chapter should be resolved in favor of openness." IOWA CODE § 21.1. The Iowa Supreme Court has noted that the purpose of the act "is to prohibit secret or 'star chamber' sessions of public bodies, to require such meeting be open and to permit the public to be present unless within the exceptions stated therein." *Dobrovolny v. Reinhardt*, 173 N.W.2d 837, 840–41 (Iowa 1970). However, "[t]he statute does not require the public body to allow any individual or group to be heard on the subject being considered." *Id*. at 841.

Meetings of governmental bodies "shall be held in open session unless closed sessions are expressly permitted by law." IOWA CODE § 21.3. "'Open session' means a meeting to which all members of the public have access." IOWA CODE § 21.2(3). A governmental body may hold a closed session only under certain circumstances not relevant here. *See* IOWA CODE § 21.5. The body may "mak[e] and enforc[e] reasonable rules for the conduct of its meetings to assure those meetings are orderly, and free from interference or interruption by spectators." IOWA CODE § 21.7.

Members of the public may seek judicial enforcement of the provisions of Chapter 21. IOWA CODE § 21.6(1). If the party seeking judicial enforcement of Chapter 21

proves that the governmental body is subject to Chapter 21 and "has held a closed session," the burden of going forward is on the governmental body "to demonstrate compliance with the requirements of this chapter." IOWA CODE § 21.6(2). Ultimately, relief under Chapter 21 flows from the court finding, by a preponderance of the evidence, that the governmental body "has violated any provision of [Chapter 21]." IOWA CODE § 21.6(3).

Plaintiff asserts defendants' violations "are the exclusion of [plaintiff] from meetings without a lawful basis and conducting meetings in which not '*all* members' of the public may attend." (Doc. 22, at 4) (citing IOWA CODE § 21.2(3)) (emphasis in original).

The issue is whether a no trespass order barring one person's attendance from future meetings amounts to holding an improper closed meeting that not "all members" of the public could attend. That is, did defendants' act of barring plaintiff from district premises transform an "open meeting" into a "closed meeting" under Iowa Code Chapter 21 because he could not attend it? The Court finds that defendants did not hold a closed meeting, and, therefore, plaintiff has not stated a claim under the IOMA.

Plaintiff's cited precedent does not speak to whether a member of the public may be properly barred from an open session. In *Barrett v. Lode*, 603 N.W.2d 766, 767–68 (Iowa 1999), the plaintiff claimed that the defendants, who were members of the school board, told the sole non-school board member attendee, a reporter, to leave because the board was going into closed session. Once the reporter left, the board decided to stay in open session because nobody else was present. *Id.* at 768. The reporter wrote in her story that the board had gone into closed session at that time. *Id.* The court, in reversing the trial court's grant of summary judgment for the board, held that if the board "did act to cause the reporter to leave by suggesting that the board was going into closed session, a fact finder could find that a de facto closed meeting was created." *Id.* at 771.

*Barrett* is distinguishable on multiple grounds. First, the reporter in *Barrett* was the only member of the public present at the meeting. *See id.* at 767–68. Thus, in asking the reporter to leave, the board knew that no member of the public would remain. Here, unlike *Barrett*, when the board disallowed plaintiff from being present at the meeting, the meeting would still be open for other members of the public to attend. The meeting was not closed to the public just because plaintiff was not allowed to attend.

Also, in *Barrett*, the board signaled to the reporter they were going into closed session, and that was the reason the reporter needed to leave. *See id.* Once the reporter left, the board changed course and decided to keep the meeting as an open session. Here, there is no such misrepresentation. The board told plaintiff that he was not allowed on District premises but did not represent that they intended to go into a closed session.

Finally, although reporters do not necessarily have extra rights under the IOMA, the reporter in *Barrett* was apparently at the board meeting to report the contents of the meeting to the public in the newspaper. *See id.* Kicking the reporter out, who was the sole non-school board person present, runs directly contrary to the purpose of the IOMA. That is, to "assure, through a requirement of open meetings of governmental bodies, that the basis and rationale of governmental decisions, as well as those decisions themselves, are easily accessible to the people." IOWA CODE § 21.1. Removing the only person who will be reporting to the public what went on at the meeting is in direct opposition to the purpose of the Act. Disallowing a member of the public—one of many—from attending meetings is a different context altogether.

Plaintiff also cites *City of Postville v. Upper Explorerland Reg'l Plan. Comm'n*, 834 N.W.2d 1 (Iowa 2013) in support of his argument. There, the issue was whether certain notice of meetings covered by the IOMA was sufficient under the statute. The court held that there was a genuine issue of material fact about whether the location of the notices substantially complied under the statutory requirements. *Id.* at 9–10. Plaintiff

10

makes little attempt to explain how *City of Postville* is relevant in this case.  He argues only that "[t]he scope given Chapter 21 in *Barrett* and *Postville* are binding here." (Doc. 22, at 5).  Although this may be true, *City of Postville* provides little, if any, direction here.

Defendants rely on *Hirt v. Unified Sch. Dist. No. 287*, No. 2:17-CV-02279-HLT, 2019 WL 1866321 (D. Kan. Apr. 24, 2019) (unpublished), a case with similar facts decided under Kansas law.  In *Hirt*, the defendant school board sent a letter prohibiting Hirt from being on district property.  *Id.* at *2.  As a consequence of the ban, Hirt could no longer attend school board meetings.  *Id.* at *2.  The parties in *Hirt* disputed the board's reason for banning Hirt from the property, but the underlying reason was not material to the court's ultimate analysis or holding on the issue.  *Id.*  The relevant Kansas statute requires the meetings to be "open to the public."  KAN. STAT. § 75-4318(a).  The court granted summary judgment for the board, noting that the statute requires the meetings to be open to the public, "and there are no facts presented that the school board meetings were not open to the public—only that Hirt was temporarily prohibited from coming on school property."  *Hirt*, 2019 WL 1866321 at *6.  The court also noted that the Kansas statute "does not guarantee attendance for every individual."  *Id.*

Although the language of the Kansas statute is slightly different from the IOMA, the general analysis and reasoning in *Hirt* are persuasive.  Here, like in *Hirt*, defendants prohibited plaintiff from entering District property, resulting in plaintiff being unable to attend board meetings.  In *Hirt*, the plaintiff claimed his exclusion from the meetings resulted in the school board violating the statute because the meetings were required to be open to the public, and Hirt was a member of the public.  *See id.*  Here, plaintiff makes essentially the same claim.  That is, plaintiff claims his exclusion from the meetings resulted in defendants violating the statute because meetings are required to be held so that all members of the public have access, and plaintiff is a member of the public.

Plaintiff points out that the language of the Kansas statute is different from the language in the Iowa statute. Specifically, the Kansas statute requires meetings to be "open to the public," while the IOMA requires "all members of the public" to have access. The slight difference in wording is not material. Both the Kansas and Iowa statutes require the public have access to meetings. Here, like in *Hirt*, plaintiff has not alleged facts showing that the public did not have access to the meetings. Rather, he alleges that he was prohibited from going onto school property. This is not enough to state a claim under the IOMA.

Accordingly, Count II of the complaint, plaintiff's claim under Iowa Code Chapter 21, is dismissed.

### B. First Amendment Claims

In Count I of his complaint, plaintiff claims defendants retaliated against him in violation of his First Amendment rights, bringing his claim under Title 42, United States Code, Section 1983. (Doc. 1, at 8–10). Plaintiff brings the claim against all individual defendants in both their individual and official capacities, as well as against the District. (*Id.*, at 2, 8–10). Defendants move to dismiss this claim only against the individual defendants—that is, all defendants other than the District—making two distinct arguments. First, defendants assert plaintiff's claim against the individual defendants in their individual capacities fails because these defendants are entitled to qualified immunity. (Doc. 16-1, at 8). Second, defendants argue plaintiff's claim against these defendants in their official capacities fails "because the claims are merely duplicative of his claim against the District." (*Id.*). The Court will analyze each argument in turn.

### 1. Individual Capacity Claims

"Qualified immunity shields government officials from liability in a § 1983 action unless the official's conduct violates a clearly established constitutional or statutory right of which a reasonable person would have known." *Baude v. Leyshock*, 23 F.4th 1065,

1071 (8th Cir. 2022) (quoting *Burbridge v. City of St. Louis*, 2 F.4th 774, 780 (8th Cir. 2021)). At the motion to dismiss stage, defendants must show they are "entitled to qualified immunity 'on the face of the complaint.'" *Baude*, 23 F.4th at 1071 (quoting *Stanley v. Finnegan*, 899 F.3d 623, 627 (8th Cir. 2018)). "To overcome qualified immunity, the plaintiff must plead facts showing (1) that the official violated a statutory or constitutional right, and (2) that the right was clearly established at the time of the challenged conduct." *LeMay v. Mays*, 18 F.4th 283, 287 (8th Cir. 2021) (cleaned up). "If either prong is not satisfied, the defendant is entitled to qualified immunity." *Id.* (citing *Norris v. Engles*, 494 F.3d 634, 637 (8th Cir. 2007)).

Defendants argue that plaintiff has not satisfied the second prong of the qualified immunity test. (Doc. 16-1, at 8–11). Specifically, defendants argue that "[w]hether the District's actions are ultimately upheld on the merits, Plaintiff's alleged constitutional right to behave in such a manner at school board meetings, or otherwise on District property, is not clearly established." (*Id.*, at 11). This comes after defendants characterize plaintiff's behavior as "disruptive and threatening" toward the board members. (*Id.*). Thus, defendants' argument is that they did not violate any clearly established right by banning plaintiff from school board meetings after he was disruptive and threatening. Plaintiff argues he pled facts which state a claim under the First Amendment retaliation standard, his statements were not a "true threat," he did not disrupt school board meetings, and qualified immunity is "categorically unavailable to the defendants" because his complaint "is based on retaliation for his exercise of constitutionally protected speech." (Doc. 22, at 6–13).

The issue is whether there are facts in the complaint which sufficiently allege the individual defendants violated plaintiff's clearly established rights. "To be clearly established, a legal principle must have a sufficiently clear foundation in then-existing precedent." *Graham v. Barnette*, 5 F.4th 872, 887 (8th Cir. 2021) (citing *District of*

*Columbia v. Wesby*, 583 U.S. 48, 63 (2018)). "Clearly established means that, at the time of the officer's conduct, the law was sufficiently clear that every reasonable official would understand that what he is doing is unlawful." *Wesby*, 583 U.S. at 63 (citing *Ashcroft v. al–Kidd*, 563 U.S. 731, 741–42 (2011)) (internal quotations omitted). A plaintiff is required to "point to existing circuit precedent that involves sufficiently similar facts to squarely govern the official's conduct in the specific circumstances at issue, or, in the absence of binding precedent, . . . a robust consensus of cases of persuasive authority constituting settled law." *Graham*, 5 F.4th at 887 (internal citations and quotations omitted). Still, in some circumstances "a general constitutional rule already identified in the decisional law may apply with obvious clarity to the specific conduct in question." *Hope v. Pelzer*, 536 U.S. 730, 741 (2002) (quoting *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)).

Generally, whether a state actor "unconstitutionally excluded a private speaker from use of a public forum depend[s] on the nature of the forum." *Good News Club v. Milford Cent. Sch.*, 533 U.S. 98, 106 (2001). "Limited public forums (sometimes called nonpublic forums) include public properties that are not by tradition or designation public forums but have been opened by the government for limited purposes, communicative or otherwise." *Powell v. Noble*, 798 F.3d 690, 699 (8th Cir. 2015). Government restrictions on speech in limited public forums must be "reasonable and viewpoint neutral." *Id.* at 700. The parties here agree that the school board meetings at issue constitute limited public forums, and there is case law supporting that conclusion. (Docs. 16-1, at 10; 22, at 10); *see Green v. Nocciero*, 676 F.3d 748, 753 (8th Cir. 2012).

Plaintiff's principal—in fact, only—argument on the qualified immunity front, outside of distinguishing a case cited by defendants, is that "defendants' claim for qualified immunity for First Amendment retaliation is foreclosed by precedent." (Doc. 22, at 13). Plaintiff cites *Pendleton v. St. Louis Cnty.* in support of this argument. 178

F.3d 1007, 1011 (8th Cir. 1999) ("[I]t is well-established that a public official's retaliation against an individual exercising his or her First Amendment rights is a violation of § 1983."). The government actors in *Pendleton* allegedly conspired against the plaintiffs, fabricated a criminal investigation, and ultimately contacted the plaintiffs' employers in an attempt to get them fired, all in retaliation for plaintiffs exercising their First Amendment rights of free speech. *Id.* at 1009–11.

*Pendleton* does not involve the required "sufficiently similar facts" that "squarely govern" defendants' conduct here. *See Graham*, 5 F.4th at 887. Indeed, in *Pendleton*, the court cites three Eighth Circuit cases for the general principle that retaliation against the exercise of First Amendment rights is grounds for Section 1983 liability. Each of the three cases deals with a plaintiff losing their job because of their exercise of First Amendment rights, which is precisely the context of *Pendleton* itself. *Pendleton*, 178 F.3d at 1011 (citing *Helvey v. City of Maplewood*, 154 F.3d 841, 844 (8th Cir.1998); *Barnard v. Jackson Cnty.*, 43 F.3d 1218, 1222–23 (8th Cir.1995); *Shands v. City of Kennett*, 993 F.2d 1337, 1342 (8th Cir.1993)). This is the level of specificity required to show clearly established law.

There are, however, relevant cases with similar facts which support plaintiff's position. The Supreme Court has held that when a school board "sits in public meetings to conduct public business and hear the views of citizens, it may not be required to discriminate between speakers on . . . the content of their speech." *City of Madison, Joint Sch. Dist. No. 8 v. Wis. Emp. Rels. Comm'n*, 429 U.S. 167, 176 (1976). The Court later characterized the First Amendment violation in *City of Madison* as occurring "when the meetings were suddenly closed to one segment of the public even though they otherwise remained open for participation by the public at large." *Minn. State Bd. for Cmty. Colls. v. Knight*, 465 U.S. 271, 281 (1984). Thus, there is some Supreme Court

Case 1:23-cv-00033-CJW-MAR   Document 34   Filed 09/21/23   Page 15 of 26

precedent prohibiting selectively closing school board meetings which are open for public participation based on the content of a person's speech.

The Eighth Circuit Court of Appeals has articulated a similar standard. In *Green*, the court provided that the "School Board could reasonably restrict public access to this forum 'based on the subject matter of the speech, on the identity or status of the speaker, or on the practical need to restrict access for reasons of manageability or the lack of resources to meet total demand.'" 676 F.3d at 753 (quoting *Victory Through Jesus Sports v. Lee's Summit R–7 Sch. Dist.*, 640 F.3d 329, 334–35 (8th Cir. 2011)). Reasonable restrictions include removing a member of the public who is "unruly or disruptive" to prevent "badgering, constant interruptions, and disregard for the rules of decorum." *Id.* (quoting *Eichenlaub v. Twp. of Indiana*, 385 F.3d 274, 281 (3d Cir. 2004)). However, once the board decided to "conduct its business in public and to hear citizen views, the Board could not deny access to the meeting and, while it could limit the subject matter of citizen comments, it could not discriminate against a speaker based on his viewpoint." *Green*, 676 F.3d at 754.

Here, plaintiff alleges that defendants retaliated against him by discriminating against his viewpoint. The alleged retaliation and discrimination occurred in a limited public forum. Plaintiff alleges that he was not disruptive, threatening, and did not extend the meetings past the time they would have otherwise taken. Thus, plaintiff has alleged facts which, assuming they are true, could result in defendants having violated clearly established law, as established by *Green*. *See* 676 F.3d at 753–54; *see also Gerlich v. Leath*, 861 F.3d 697, 709 (8th Cir. 2017) ("Given this history, plaintiffs' right not to be subjected to viewpoint discrimination while speaking in a university's limited public forum was thus clearly established at the times in question."); *McNeally v. HomeTown Bank*, No. 21-cv-2614 (ECT/DTS), 2022 WL 2220922, at *10 (D. Minn. June 21, 2022)

("Binding and persuasive authorities show that the right not to be excluded from a public board meeting in retaliation for First Amendment activities is clearly established.").[4]

Defendants argue they did not violate any clearly established right of plaintiff by banning him from school board meetings after he was disruptive and threatening. This argument contains a fatal flaw. At the motion to dismiss stage, the Court must accept as true all factual pleadings in the complaint. *Erickson*, 551 U.S. at 94. The Court must also grant reasonable inferences in plaintiff's favor. *Crumpley-Patterson*, 388 F.3d at 590. Defendants' argument rests on the theory that plaintiff was disruptive and threatening. But accepting as true the facts pled by plaintiff and granting all reasonable inferences in plaintiff's favor, the premise that he was disruptive and threatening cannot be accepted at this stage.

Defendants rely principally on *Barna v. Bd. Of Sch. Dirs. of Panther Valley Sch. Dist.*, 877 F.3d 136 (3d Cir. 2017). In *Barna*, the plaintiff told the school district board president that the board president would not like it if the plaintiff's friends came to the next meeting because "[s]ome of my friends have guns." *Id.* at 140. At a later meeting, upon a school official asking the plaintiff to leave because of the gun remark, the plaintiff stated that he "may have to come after all of yous." *Id.* At another meeting, the plaintiff stood up and challenged the board president to a fight and later admitted that he "blew [his] top" and was "just mad." *Id.* (alteration in original). The board sent the plaintiff a letter barring him from board meetings and other school activities because of his disruptive behavior. *Id.*

---

[4] *McNeally* was decided after the events at issue here took place and is only persuasive authority as a district court decision. Thus, *McNeally* cannot be used to prove clearly established law at the time of the alleged constitutional violations here. Nevertheless, *McNeally* is persuasive authority with similar facts to those at issue and was decided at the motion to dismiss stage. The Court finds the analysis from *McNeally* well-reasoned and persuasive.

17

As defendants note, the issue in *Barna* was whether school officials were entitled to qualified immunity when they excluded a person from school board meetings because he was disruptive and threatening. *See id.* at 142–43 ("Barna urges us to recognize that the right to participate in school board meetings despite engaging in a pattern of threatening and disruptive behavior was clearly established . . ..").  The parties in *Barna* appear to have agreed—or, at least, the court believed—that the plaintiff in fact engaged in "a pattern of threatening and disruptive behavior." *Id.*  The court held that the defendants were entitled to qualified immunity, concluding that there was no "clearly established right to participate in school board meetings despite engaging in a pattern of threatening and disruptive behavior." *Id.* at 144.

*Barna* is distinguishable.  Here, as plaintiff points out, he denies engaging in threatening and disruptive behavior. (Doc. 22, at 13).  More importantly, the facts plaintiff pled in the complaint, when granting plaintiff all reasonable inferences, do not rise to "a pattern of threatening and disruptive behavior." (Doc. 1).  According to the complaint, plaintiff kept his speeches within the rules, was not aggressive or threatening, and did not extend the total time of the meetings. (*Id.*, at 3–4).  Plaintiff here certainly never threatened to bring a gun, or to bring friends with guns, or to fist fight a member of the board, as the plaintiff did in *Barna*. *See Barna*, 877 F.3d at 140.  Finally, the court granted qualified immunity to the defendants in *Barna* at the summary judgment stage. *Id.* at 149–59.  Here, at the motion to dismiss stage, the Court cannot delve into the facts in as detailed a manner as the court could at summary judgment in *Barna*.

Defendants cite multiple other cases in support of their argument, each of which stands for essentially the same principle as *Barna*.  In *Dyer v. Atlanta Indep. Sch. Sys.*, the court granted summary judgment for school board defendants when they removed the plaintiff from school board meetings "for his disruptive behavior and lack of proper decorum."  852 F. App'x 397, 402 (11th Cir. Mar. 22, 2021) (unpublished).  In *Moms*

*for Liberty – Brevard Cnty. v. Brevard Pub. Schs.*, the court denied the plaintiff's motion for a preliminary injunction of a school board policy, holding that the policy was "content- and viewpoint-neutral," and when the board's chairperson kicked one of the plaintiffs out of a meeting, it was "because his speech was abusive and disruptive." 582 F. Supp. 3d 1214, 1219–20 (M.D. Fla. 2022), *aff'd*, No. 22-10297, 2022 WL 17091924 (11th Cir. Nov. 21, 2022). In *Hirt*, the court granted summary judgment for the district's superintendent on a First Amendment retaliation claim for removal from a school board meeting when the undisputed facts showed the plaintiff spoke out of turn at meetings, called board members names, drove through school parking lots sixteen times for no reason, and unsuccessfully attempted to enter classrooms twice. 2019 WL 1866321, at *16, 18–19. These cases show, at least, that there is no clearly established constitutional right to attend school board meetings after engaging in disruptive, abusive, and threatening behavior. Here, as noted above, plaintiff's behavior cannot be considered disruptive, abusive, and threatening, at least at this stage of the proceedings.

Thus, defendants' motion to dismiss based on qualified immunity fails because plaintiff has alleged facts which, if true, can establish that defendants violated clearly established law.

### 2. *Official Capacity Claims*

Plaintiff states in the complaint that "[a]ll individual defendants are sued in individual and official capacities." (Doc. 1, at 2). Defendants motion to dismiss plaintiff's First Amendment claim against the individual defendants in their official capacities "because the claim is merely duplicative of Plaintiff's claim against the District." (Doc. 16, at 2). Defendants argue that the "real party in interest" is the District, and therefore plaintiff's official capacity claims against the individual defendants "are just claims against the District, which is already a party to this action." (Doc. 16-1, at 12). Plaintiff responds by distinguishing a case that defendants cite and arguing the

merits of his claim against the individual defendants in their official capacity. (Doc. 22, at 14). Defendants have the better argument.

In differentiating official capacity suits from individual capacity suits, the Supreme Court has provided:

> Official-capacity suits, in contrast, "generally represent only another way of pleading an action against an entity of which an officer is an agent." *Monell v. New York City Dept. of Social Services*, 436 U.S. 658, 690, n.55 (1978). As long as the government entity receives notice and an opportunity to respond, an official-capacity suit is, in all respects other than name, to be treated as a suit against the entity. *Brandon v. Holt*, 469 U.S. 464, 471–72 (1985). It is not a suit against the official personally, for the real party in interest is the entity.

*Kentucky v. Graham*, 473 U.S. 159, 165–66 (1985) (cleaned up). "A suit against a government officer in his official capacity is functionally equivalent to a suit against the employing governmental entity." *Veatch v. Bartels Lutheran Home*, 627 F.3d 1254, 1257 (8th Cir. 2010).

The Eighth Circuit Court of Appeals has upheld dismissals of official capacity claims in similar situations. Defendants cite *Artis v. Francis Howell N. Band Booster Ass'n, Inc.* as an example. 161 F.3d 1178 (8th Cir. 1998). In *Artis*, the court analyzed the claim against the official as an official capacity claim. *Id.* at 1182. The court simply held that "[t]he district court correctly dismissed the claim against [the individual defendant] as redundant to the claim against the School District." *Id.* In *Veatch*, the court affirmed dismissal of the official capacity claim "as redundant of the claim against the City." 627 F.3d at 1257. In *Doe v. Claiborne Cnty.*, the Sixth Circuit affirmed dismissal of official capacity claims "because a suit against an official of the state is treated as a suit against the municipality." 103 F.3d 495, 509 (6th Cir. 1996).

Plaintiff cites to no authority where the official capacity claims were not dismissed in this context. He cites *Luong v. House*, No. 4:21-cv-00214, 2023 WL 2890196, at *6

(S.D. Iowa Apr. 11, 2023) for the proposition that "when a plaintiff can show 'a policy or custom caused the alleged violation' the individual official capacity claims can proceed." (Doc. 22, at 14). Immediately preceding this quote, the court noted that "[l]iability for city officials in their official capacities is another form of action against the city." *Luong*, 2023 WL 2890196, at *6 (quoting *Rogers v. City of Little Rock*, 152 F.3d 790, 800 (8th Cir. 1998)). In both *Luong* and *Rogers*, the official capacity claims failed. *See id.*; *Rogers*, 152 F.3d at 800.

In sum, plaintiff's official capacity claims against the individual defendants are redundant and duplicative of the claims against the District. Therefore, plaintiff's First Amendment retaliation claims against the individual defendants in their official capacities are dismissed.

### C. *Defendant Bush*

Plaintiff maintains a claim against defendant Russ Bush in his individual capacity. (Doc. 1, at 2). Noreen Bush passed away on October 23, 2022. (Doc. 1, at 8). On May 17, 2023, plaintiff filed this lawsuit, naming Noreen Bush's widower Russ Bush as defendant in her place. (Doc. 1). The Court has already held that the District is the appropriate defendant regarding plaintiff's official capacity claims, and the claims against individual defendants, including Bush, will be dismissed against them in their official capacity. Even if the Court had not dismissed the official capacity claim against Bush for that reason, it would find that he is not a proper defendant regarding the official capacity claim for the reasons that follow.

Plaintiff asserts defendant Russ Bush is the successor-in-interest to his wife, then-superintendent Noreen Bush, and cites Section 611.22 of the Iowa Code to support that claim. (Doc. 1, at 8). Defendants argue defendant Bush is an improper defendant in both his official and individual capacity. (Doc. 16-1, at 13).

21

As for defendant Bush in his official capacity, defendants assert there is "no allegation in the [c]omplaint that references Mr. Bush having any role in the District" so he does not himself have an official role capable of supporting a suit in official capacity. (*Id.*). Further, Federal Rule of Civil Procedure 25(d) provides that when a public officer who is a party in an official capacity dies, "[t]he officer's successor is automatically substituted as a party." FED. R. CIV. P. 25. Here, the successor to Noreen Bush regarding the official capacity claim is the current superintendent.

As for defendant Bush in his individual capacity, defendants assert the claim should be brought against the decedent's estate or personal representative under Section 611.22. (Doc. 16-1, at 14). "Any action contemplated in [S]ections 611.20 and 611.21 may be brought, or the court, on motion, may allow the action to be continued, by or against the legal representatives or successors in interest of the deceased." IOWA CODE § 611.22.

Plaintiff resists, contending Iowa's survivor statute controls and provides that an action survives the death of a defendant with the substitution of the deceased's personal representative. (Doc. 22, at 14) (citing IOWA CODE Section 611.22). Plaintiff then contends defendants had the responsibility to defend and indemnify its officers from Section 1983 claims, and thus, had the responsibility to aid defendant Bush in opening an estate that plaintiff could sue. (*Id.*).

In reply, defendants state Iowa Code Section 611.22 provides that an action survives the death of a defendant, but argue plaintiff bears the burden to follow the appropriate procedure as set forth in Iowa's probate code to appoint a personal representative, citing Iowa Code Section 633. (Doc. 25, at 7).

The Court finds defendant Russ Bush is not a proper defendant in his official capacity. "Claims against individuals in their official capacities are equivalent to claims against the entity for which they work" and "require proof that a policy or custom of the entity violated the plaintiff's rights." *Hoffert v. Floyd Cnty. Cent. Point of Coordination*,

No. 13-CV-2052-LRR, 2015 WL 58767, at *4 (N.D. Iowa Jan. 5, 2015) (citing *Gorman v. Bartch*, 152 F.3d 907, 914 (8th Cir. 1998)); *see also Monell*, 436 U.S. at 690 n.55. Here, plaintiff makes no allegation that defendant Bush himself works or ever worked for the District. (*See* Doc. 1, at 2, 8) (describing defendant Bush only as Noreen Bush's successor-in-interest and legal representative).

Nor is Bush a proper defendant in his official capacity by being Noreen Bush's personal representative. Claims against public officers in their official capacity are, in fact, claims against the state of Iowa. *Mial v. Foxhoven*, No. C17-4007-LTS, 2017 WL 11461016, at *6 (N.D. Iowa Nov. 14, 2017) (citing *Hafer v. Melo*, 502 U.S. 21, 25 (1991) (further citations omitted)). Thus, when a public officer who is a party in an official capacity dies while the action is pending, "[t]he officer's successor is automatically substituted as a party." FED. R. CIV. P. 25. "Later proceedings should be in the substituted party's name, but any misnomer not affecting the parties' substantial rights must be disregarded." FED. R. CIV. P. 25. When the public officer dies before the lawsuit, courts have dismissed the claims against that public officer in their official capacity. *Schlumpberger v. Osborne*, No. 0:16-cv-78-SRN-TNL, 2019 WL 927322, at *3 (D. Minn. Feb. 26, 2019). Here, Russ Bush is not the successor to Noreen Bush in her role as a public officer, and plaintiff has already named Noreen Bush's successor—defendant Grover—as a defendant.

The Court turns now to the issue of defendant Bush in his individual capacity. Because the Court hears this case under federal-question jurisdiction, the *Erie* doctrine does not apply. *Pritchard v. Smith*, 289 F.2d 153, 154 (8th Cir. 1961). Nevertheless, federal courts look to state law to determine whether the claim survives the death of an officer. *Id.* at 158; *Allen v. Morris*, No. 4:93cv00398-BSM-JWC, 2010 WL 2243810, at *1 (E.D. Ark. May 12, 2010), report and recommendation adopted, No. 493cv00398

BSM-JWC, 2010 WL 2243670 (E.D. Ark. June 4, 2010). Here, Section 611.22 of the Iowa Code provides:

> Any action contemplated in sections 611.20 and 611.21 may be brought, or the court, on motion, may allow the action to be continued, by or against the legal representatives or successors in interest of the deceased. Such action shall be deemed a continuing one, and to have accrued to such representative or successor at the time it would have accrued to the deceased if the deceased had survived.

Plaintiff did not allege facts beyond legal conclusions that Russ Bush is the "personal representative" of Noreen Bush. *See* IOWA CODE § 633.294. The special jurisdiction of Iowa probate courts includes "the appointment of personal representatives . . . [and] the administration, settlement and distribution of estates of decedents[.]" IOWA CODE § 633.10(1); *Rand v. Sec. Nat'l Corp.*, 974 N.W.2d 87, 90 (Iowa 2022). When appointing a personal representative, the probate court must give first preference to "[t]he person designated in the will." IOWA CODE § 633.294(1); *Rand*, 974 N.W.2d at 92. Plaintiff, in fact, alleged no estate had been opened for Noreen Bush. (Doc. 1, at 8).

Even so, plaintiff asserts that under Iowa Code 670.8(1) and (2), the District has the duty to defend and indemnify its officers and employees from any tort claim, including cases arising under Section 1983 (Doc. 22, at 14), and thus must assist Russ Bush in opening an estate that plaintiff can then sue. The Court finds plaintiff reads this duty too broadly.

Under Section 670.8, the District "shall defend its officers and employees" and "shall save harmless and indemnify the officers and employees against any tort claim or demand . . . arising out of an alleged act or omission occurring within the scope of their employment or duties" including "cases arising under 42 U.S.C. § 1983." IOWA CODE § 670.8; *see also* IOWA CODE § 670.1(2) (including "school district" within the definition of "municipality."); *Accent Media, Inc. v. Young*, No. 12-CV-07-LRR, 2013 WL

24

12140468, at *20 (N.D. Iowa Sept. 11, 2013); *S.O. ex rel. J.O. Sr. v. Carlisle Sch. Dist.*, 766 N.W.2d 648 (Table), 2009 WL 605994, at *3 (Iowa Ct. App. Mar. 11, 2009) ("Claims asserted against School District employees acting in their capacity as School District employees are subject to Iowa Code chapter 670.").

The issue is what actions this duty to defend encompasses. The duty to defend certainly extends to defense against lawsuits. *City of W. Branch v. Miller*, 546 N.W.2d 598, 603 (Iowa 1996); *Diercks v. City of Bettendorf*, 929 N.W.2d 273 (Table), at *9 (Iowa Ct. App. July 3, 2019). It does not extend to liability for punitive damages. *Fink v. Kitzman*, 881 F. Supp. 1347, 1392 (N.D. Iowa 1995) (citing *Vlotho v. Hardin Cnty.*, 509 N.W.2d 350, 353 (Iowa 1993)). Plaintiff does not provide any authority showing that Section 670.8's duty to defend extends to helping Russ Bush open an estate for Noreen Bush and become Noreen Bush's personal representative. Although the District may have the duty to defend and indemnify its officers under a Section 1983 claim, this duty does not require the District to open an estate for Noreen Bush or somehow compel Russ Bush to do so.

Therefore, defendant Bush is not a proper defendant in his official or individual capacity, and plaintiff's First Amendment retaliation claim against him is dismissed.

## IV.    CONCLUSION

For the reasons stated above, the Court **grants-in-part and denies-in-part** defendants' partial motion to dismiss.

Defendants' motion to dismiss plaintiff's claim under Iowa Code Chapter 21, the Iowa Open Meetings Act, is **granted**. Plaintiff's Count II is **dismissed** against all defendants.

Defendants' motion to dismiss plaintiff's First Amendment retaliation claim against the individual defendants in their official capacities is **granted**. Plaintiff's Count I is **dismissed** against defendants Russ Bush, Tawana Grover, Jennifer Borcherding,

Cindy Garlock, Nancy Humbles, Dexter Merschbrock, Jennifer Neumann, Marcy Roundtree, and David Tominsky in their official capacities.

Defendants' motion to dismiss plaintiff's individual capacity First Amendment retaliation claim against defendant Rush Bush is **granted**. Plaintiff's Count I claim is **dismissed** against defendant Russ Bush.

Defendants' motion to dismiss plaintiff's First Amendment claim against the individual defendants in their individual capacities, Count I, is **denied**.

**IT IS SO ORDERED** this 21st day of September, 2023.

_____
C.J. Williams
United States District Judge
Northern District of Iowa